PATRICK RUSSELL,

      **Plaintiff,**                                        Case No. 08-13213
                                                                                Honorable Denise Page Hood

v.

CITY OF ROSEVILLE, KURT LATOUR,
RYAN MONROE, THOMAS PFEIFER, DONALD
GLANDON,

      **Defendants.**

_____/

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SCHEDULING STATUS CONFERENCE

## I.     INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment, filed on May 11, 2009. Plaintiff filed a Response to Defendants' Motion for Summary Judgment on June 1, 2009. Defendants filed a Reply to Plaintiff's Response on June 10, 2009. A hearing was held on June 17, 2009.

## II.    STATEMENT OF FACTS

On July 25, 2008, Plaintiff, Patrick Russell, initiated this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights, as well as state law violations against Defendants, City of Roseville, Officers Joseph McLeod, Ryan Moore, Kurt Latour, Thomas Pfeifer, and Donald Glandon. Plaintiff asserts the following claims in his nine count Complaint: Assault and Battery, Count I; False Arrest/False Imprisonment, Count II; Malicious Prosecution, Count III; Fourth Amendment/Excessive Force, Count IV; Fourth

1

Amendment/Warrantless Search and Seizure, Count V; Fourth Amendment/Malicious Prosecution, Count VI; Fourteenth Amendment/Deliberate Indifference to a Serious Medical Need, Count VII; Gross Negligence, Count VIII; and *Monell*/Failure to Train, Count IX.

The facts giving rise to this action are, for the most part, entirely contested by the parties. Plaintiff asserts that in the early morning hours of October 15, 2006, he was driving his vehicle eastbound on Garfield Road in the City of Roseville when he noticed a police car following behind him with its sirens activated, but he did not initially stop. *See* Plf.'s Resp., Ex. A, Dep. Tr. of P. Russell, pgs. 39, 64. Plaintiff asserts that he did begin to stop once he saw Defendant LaTour, who was standing outside his squad car.[1] *Id.*, pgs. 42-43. Plaintiff claims that despite significantly slowing his vehicle down in order to come to a stop, Defendant LaTour deployed his "stop stick" which caused Plaintiff's car's rear tires to deflate. *Id.*, p. 26, Ex. D, Dep. Tr. of Joseph McLeod, pgs. 24-25.

Conversely, Defendants argue that Defendants McLeod and Monroe were on patrol the night of October 15, 2006, when they observed Plaintiff's vehicle, a blue Cadillac, driving at fifty six (56) miles per hour (mph) in a posted thirty five (35) mph zone. The officers were unable to catch up with Plaintiff, so they called for backup. The officers claim that Plaintiff continued to flee even after they had engaged their overhead lights and sirens. A high speed pursuit ensued through the neighborhoods of Roseville. At various times throughout the chase, Plaintiff's vehicle's speed exceeded sixty (60) mph on streets with a posted speed limit of thirty (30) mph. Plaintiff's flight

---

[1] Plaintiff claims that he did not hear Defendant LaTour order him out of his vehicle at this time; however Defendant LaTour claims that he did order him out of the vehicle. Defendant LaTour acknowledged during his deposition that Plaintiff may not have heard his order as the sirens were so loud.

ended on Grant Street where Defendants LaTour and Pfeifer were able to block off the street with their police vehicle.[2] Officer LaTour ordered Plaintiff out of his vehicle and employed his stop stick to deflate Plaintiff's tires so that he could not continue in his flight from police.

Plaintiff asserts that Defendants LaTour and McLeod immediately ran to Plaintiff's vehicle and LaTour shattered the driver's side window with his flashlight. *Id.*, Ex. A at 44; Ex. D, pgs. 32-33. Plaintiff asserts that he was never ordered to exit his vehicle until after Defendant LaTour shattered his window.[3] Both Defendants LaTour and McLeod violently yanked Plaintiff from his vehicle, and tackled him to the pavement. According to Plaintiff, he was fully compliant with the officers' orders. The officers then dragged Plaintiff several feet across the pavement and over the shattered window glass, causing Plaintiff to suffer severe pain and multiple abrasions to his arms and upper body. *Id.*, Ex. A at 49.

Plaintiff claims that as he lay face first on the pavement with his hands underneath him, two of the Defendants ground their knees into his back while one of the Defendants struck him from behind with a hard object that caused Plaintiff to lose consciousness. Then Defendant McLeod gave ten knee strikes to his upper body and head. At no time during Defendant McLeod's multiple knee strikes to Plaintiff did Defendants LaTour, Monroe, and Pfeifer make any attempt to intervene and stop McLeod's actions. Plaintiff contends that Defendant LaTour attempted to tase him twice but was unsuccessful while Defendant Monroe hurled insults at Plaintiff, such as "fucking dumb ass." *Id.*, Ex. E, Dep. Tr. of Ryan Monroe, pgs. 30-31) Defendant Pfeifer then placed his foot on top of

---

[2] It appears that the chase was approximately five minutes in duration. *See* Plf.'s Resp., Ex. N.

[3] A review of the videotape of the incident appears to support Plaintiff's contention.

Plaintiff and began to excessively apply pressure to Plaintiff's wrist.

Defendants' account of the circumstances are quite different than Plaintiff's version of events. Defendants submit that instead of complying with their orders to exit the vehicle, Plaintiff began leaning toward the middle of his vehicle. *See* Def.'s Mot. for Summ. J., Exs. E and D. This is the point at which Defendant LaTour broke the window to Plaintiff's vehicle. Defendant LaTour claims that he was concerned that Plaintiff was reaching for a weapon. Additionally, Defendant LaTour maintains that, contrary to Plaintiff's allegations, as he was removing Plaintiff from the vehicle, Defendant LaTour tripped, causing both Plaintiff and Defendant LaTour to fall to the ground. *Id.*, Ex. G, Dep. Tr. of Kurt LaTour, pg 29.

Defendants assert that once on the ground, Plaintiff continued to resist arrest. Plaintiff refused to place his arms behind his back despite being ordered to do so by the officers on the scene.[4] After a brief struggle, Defendants LaTour, McLeod, and Pfeifer were able to put handcuffs on Plaintiff. Lieutenant Donald Glandon arrived on the scene shortly after Plaintiff was placed in handcuffs. Defendants recognized that Plaintiff had sustained a laceration under his right eye during the struggle and an ambulance was called to the scene almost immediately after Plaintiff was placed in handcuffs.

Plaintiff claims he remained handcuffed and was bleeding for approximately twenty minutes before EMS arrived. All of the Defendants admitted that Plaintiff's face was covered in blood due to injuries to his eye and lacerations to his face. EMS transported Plaintiff to St. John Macomb Hospital. As a result of Defendants' actions, Plaintiff asserts that he sustained a fractured right eye

---

[4] Plaintiff maintains that the reason he did not give the officers his hands was due to the fact that they were on top of him and could not bring his arms out from underneath him, as well as the fact that he was unconscious for part of this time.

4

socket, a right eye hematoma, damage to his nose and eardrum, bruised ribs, and several abrasions. Plaintiff further asserts that three months after this incident he was again treated because he was unable to hear due to the damage done to his eardrum. Plaintiff claims that he still suffers from periodic headaches and blurred vision in his right eye as a result of this incident.

Plaintiff was subsequently charged with fleeing and eluding, operating while intoxicated, and resisting and obstructing. The resisting and obstructing charge was dismissed, although the parties disagree as to the reason for its dismissal. Plaintiff asserts the resisting and obstructing charge was dismissed at the preliminary examination hearing after the trial court judge viewed the videotape of the incident. Defendants submit that Plaintiff pled guilty to fleeing and eluding third degree and operating while intoxicated third offense in exchange for dismissal of a habitual fourth and the resisting and obstructing charge. Defendants' explanation misrepresents the reason for the dismissal and the Court concludes that Plaintiff is correct that the resisting and obstructing charge was dismissed for lack of probable cause. The Court bases this conclusion upon the preliminary examination and the August 25, 2008 police report. The following exchange occurred between the trial court judge and Plaintiff's defense counsel at the preliminary examination:

> MR. FLEMMING:     With respect to count two, I note for the record that we watched the copy of the video tape in chambers from the incident. And my understanding is that the Court is going to dismiss that charge for lack of probable cause.
>
> THE COURT:     The record should reflect that the Court did watch the videotape . . . . It appears that based upon that– although there was some attempt on Mr. Russell's part to try and move his arms around, I believe they may have been because of the fact that the officers were trying to subdue him and they had three or four officers around him; so I'm satisfied that that Count should be dismissed especially since there is a much

5

more serious charge against him that has been established. So count two then is dismissed.

*See* Plf.'s Resp., Ex. K, pgs. 3-4; *See also*, Def.'s Mot. for Summ. J., Ex. L, Roseville Arrest Report 0690006861.9 ("The prosecutor . . . took a copy of the tape and after review from her superiors, they decided to dismiss the R & O charge and pursue the OWI III and the fleeing and eluding.")

## III.    APPLICABLE LAW & ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

### B.     Fourth Amendment

#### 1.     Excessive Force (Count IV)[5] and Qualified Immunity

Defendants assert that their conduct was objectively reasonable because Plaintiff led them on a high-speed chase, at times driving at speeds over sixty miles an hour, through the neighborhoods of Roseville[6] and, once removed from his vehicle, he actively resisted arrest and kept his arms under his body despite the Defendants' orders to give them his arms. Defendants assert that they were concerned about their safety as they did not know why he led them on the chase and whether or not he had a weapon. Defendants also argue that they are entitled to qualified immunity. Plaintiff counters that the amount of force used against Plaintiff was not objectively reasonable under the circumstances and Defendants are liable for either their direct participation or their breach of the duty to intervene and stop such use of unreasonable, excessive force. Plaintiff argues that Defendants are not entitled to qualified immunity.

The Fourth Amendment's prohibition against unreasonable searches and seizures

---

[5] At the hearing on this matter, Plaintiff indicated to the Court that he would dismiss this claim against Defendant Glandon as he was not on the scene until after Plaintiff had been handcuffed. As such, count IV is dismissed as to Defendant Glandon.

[6] At times during the chase, the Plaintiff entered the city of St. Clair Shores.

encompasses the right to be free from excessive force in the course of an arrest. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). The Court's "inquiry turns on the objective reasonableness of the officer's conduct in view of the facts and circumstances facing the officer[,]*"* without inquiry into the officer's motivations and intent. *Lyons v. City of Xenia*, 417 F. 3d 565, 575 (6th Cir. 2003). The reasonableness inquiry is an objective one, evaluated from a reasonable officer's perspective on the scene, and not the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge chambers violates the Fourth Amendment." *Id.* (Internal citation omitted). "Whether an officer's use of force was reasonable turns on the facts of the case. Relevant to the inquiry are (1) the severity of the crime at issue, (2) the immediate threat the suspect poses to the safety of the officers and others, (3) the suspect's resistance, if any, and (4) the possibility of flight. *Id*. at 396. The Sixth Circuit has found that the fact that a suspect "was not handcuffed at the time he was struck" does not "preclude a finding of unreasonableness." *Baker v. City of Hamilton*, 471 F. 3d 601, 607 (6th Cir. 2006). The *Baker* court also concluded that the fact that "[the plaintiff] had attempted to evade arrest does not preclude his claim of excessive force . . . ." *Id.*

Under certain circumstances, public officials are shielded from liability under the doctrine of qualified immunity, which insulates "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is generally a threshold defense whose applicability is to be determined by the trial judge. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). The Supreme Court has set forth a two-part test to determine whether qualified immunity

should attach. First, the court must decide whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 121 (2001). If there is no such violation, the inquiry ends here. *Id.*

If a violation can be adequately stated, the court next asks whether the right was clearly established. [7] *Id.* Providing guidance in determining whether a right was clearly established, the Court stated, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." *Id. Saucier* also provides that an official's reasonable mistake is still cloaked with immunity. *Id.*; *See also, Pearson*, 129 S. Ct. at 823 ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.") Plaintiff must show that the officers violated a right so clearly established that any official in Defendants' position would have understood that they were under an affirmative duty to refrain from such conduct. *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989). In other words, Plaintiff must demonstrate that Defendants' conduct was objectively unreasonable in light of Plaintiff's clearly established rights. *See Williams v. Mehra*, 186 F. 3d 685, 691 (6th Cir. 1999).

### a. Has Plaintiff Set Forth a Fourth Amendment Claim of Excessive Force?

---

[7] The *Pearson* court held that the two-step sequence laid out in *Saucier* is no longer required, and the district courts are free to decide the second question prior to resolving the constitutional issue where appropriate. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.") *Id.*

The Court concludes that, construing the facts as alleged by Plaintiff, under the circumstances confronting the Defendants, factors two, three and four weigh in Plaintiff's favor, and against a finding of reasonableness on the part of Defendants. While speeding is not a severe crime and was the original reason the Defendants sought to stop Plaintiff, fleeing and eluding is a felony under Michigan law, punishable by no more than two years imprisonment and not more than $2,000.00 or both.[8] *See* MICH. COMP. LAWS 750.479a(2).

Despite the seriousness of Plaintiff's crime, the Court concludes that Plaintiff has presented sufficient evidence to raise a genuine issue of fact as to whether Defendants' response was unreasonable in light of the circumstances. Considering factors two and three -- whether Plaintiff posed an immediate threat to the safety of the officers, and whether Plaintiff actively resisted arrest – the evidence suggests that these questions may be answered in the negative. The Court is cognizant that Defendants claim that Officer LaTour ordered Plaintiff to exit his vehicle several times, and that Plaintiff refused to comply with his order before Officer LaTour administered the 'stop stick' to Plaintiff's tires. A review of the videotape suggests otherwise, as it appears to the Court that Defendant LaTour immediately, without any lapse of time, ran up to Plaintiff's car and shattered the driver's side window. *See* Plf.'s Resp., Ex. N. Additionally, the Court notes that there is no sound to the video at this point in time, so the Court cannot verify that Defendant LaTour was ordering Plaintiff out of the car.

The Court also finds Defendant LaTour's explanation of Plaintiff's 'accidental' fall to the ground raises a question of material fact based on the police reports submitted by the Defendant

---

[8] While Plaintiff was also charged with, and pled guilty to, a charge of OWI at the time of Plaintiff's arrest, Defendants did not know whether Plaintiff was operating his vehicle beyond the limit proscribed by law and did not observe him drinking open intoxicants while driving, as such this crime is not part of the analysis.

officers wherein no mention of an accidental fall is indicated, as well as a review of the videotape, which suggests that Plaintiff was forcibly yanked from his car, and dragged several feet across the pavement, over the shattered glass from the broken window. *See* Defs.' Mot. for Summ. J., Ex. E, Roseville Police Report No. 0690006861.2 ("I then used my flashlight to break out the drivers (sic) door window . . . Patrick was then forcibly removed from the vehicle and taken to the ground."); *See also, Id.*, Ex. D, Roseville Police Report No. 0690006861.1 ("We grabbed the uncooperative suspect and removed him from the car. He was forcibly taken to the ground and ordered to place his hands behind his back.")

It is Defendants' contention that they were concerned about their safety, believing that Plaintiff may have had a weapon, and because he was resisting arrest by failing to comply with their orders to remove his hands out from underneath him as he lay face down on the pavement. However, all of the Defendants testified that Plaintiff never hit, kicked, or punched the Defendants, or attempted to do so. Conversely, Plaintiff argues that he lost consciousness around this time because one of the Defendants hit him with a hard object. Plaintiff also submits that the reason he could not give them his hands and arms was due to the fact that so many of them were on top of him, preventing him from complying with their orders, a contention that is supported by the preliminary examination wherein the trial judge suspected this to be the circumstance, rather than Plaintiff resisting the officers' commands. A review of the videotape also supports Plaintiff's version of events, and provides no support for Defendants' theory that they thought he had a weapon because he leaned toward the center of the car. It was mere seconds between the time that Officer LaTour administered his stop stick, ran up to the driver's side of the vehicle, smashed out the window, yanked Plaintiff from the vehicle, dragged him to the ground and into the middle of

the street. That the officers had no time to witness Plaintiff's alleged suspicious movements in the car is a question of fact based on this Court's review of the videotape. Neither Plaintiff nor Defendant McLeod disagree as to the fact that McLeod administered ten knee strikes to Plaintiff's back. While Defendants claim that Plaintiff was continuing to resist arrest, Plaintiff maintains that he was under control, not resisting and posed no threat to their safety. This Court does not discern any indication that Plaintiff was resisting arrest and again finds this is a question of fact. While not controlling, the Court finds it persuasive that the prosecutor and the Court determined that the resisting and obstructing charge should be dismissed for lack of probable cause. Additionally, while Defendant McLeod was administering the ten knee strikes, Defendant Pfeifer applied a goose neck, placed his foot on top of Plaintiff, and began to apply pressure to Plaintiff's wrist. Based on the circumstances confronting the Defendants at the time of Plaintiff's arrest, the Court cannot conclude as a matter of law that their use of force was reasonable.

Additionally, the Court concludes that a question of fact remains as to whether Defendants LaTour, Monroe, and Pfeifer are also liable under the Fourth Amendment for failing to prevent or stop the use of force against Plaintiff. An officer can be liable for failing to prevent the use of excessive force when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring. *Turner v. Scott*, 119 F. 3d 425, 429 (6th Cir. 1997); *see also, Bruner v. Dunaway*, 684 F. 2d 422 (6th Cir. 1982) (the plaintiff was struck and kicked by an officer in an alley while another officer watched).

Defendants argue that Plaintiff has failed to present evidence that Officers Monroe, Pfeifer and LaTour would have been able to both glean the nature of Officer McLeod's ten knee strikes

and implement preventative measures within the short time frame that unfolded. Defendants rely on the unpublished decision of *Ontha v. Rutherford County, Tenn*., 222 Fed. Appx. 498, 506 (6th Cir. 2007) in support of their argument. *Ontha* is distinguishable, however as there was insufficient time, six to seven seconds, in which the officer, the passenger, could have determined that his fellow officer, the driver, was intentionally trying to hit the suspect with the police vehicle when the suspect got out of his car and ran on foot. *Id.* at 501, 506. Here, there is a question of fact as to whether Officers LaTour, Monroe, Pfeifer had sufficient time to implement preventative measures. Certainly the infliction of ten knee strikes could not occur in a matter of six to seven seconds. Instead of coming to Plaintiff's aid, Defendant LaTour attempted to tase Plaintiff twice, and Defendant Monroe hurled insults at Plaintiff such as "fucking dumbass." Defendants Monroe, Pfeifer and LaTour, in addition to their direct participation in the force used on Plaintiff, may also be liable for their failure to intervene on his behalf while their fellow officer used excessive force.

**b.     Was the Right Clearly Established?**

After review of the record, the Court concludes that summary judgment in favor of Defendants McLeod, LaTour, Monroe, and Pfeifer is inappropriate as Plaintiff has presented sufficient evidence on this claim to create a genuine issue of fact as to whether Defendants used excessive force during the course of Plaintiff's arrest. The Court further finds that Defendants are not entitled to qualified immunity. The right to be free from excessive force is a clearly established right. *Champion v. Outlook Nashville*, 380 F. 3d 893, 901 (6th Cir. 2004). At the time of the incident, Plaintiff's Fourth Amendment rights were so clearly established that a reasonable officer would know that the conduct in question was unlawful under the Constitution. Defendants LaTour, McLeod, Pfeifer and Monroe are not entitled to summary judgment on Plaintiff's excessive

force claim.

## 2.      Warrantless Search and Seizure (Count V)

Defendants argue that Plaintiff cannot succeed on his warrantless search and seizure claim. In order to prevail on his claim, Plaintiff must prove that the police lacked probable cause to make the arrest. *See Painter v. Robertson*, 185 F. 3d 557, 569 (6th Cir. 1999); *see also, Darrah v. City of Oak Park*, 255 F. 3d 301 (2001). A police officer has probable cause if there is a "'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Northrup v. Trippett*, 265 F. 3d 372, 379 (6th Cir. 2001). Here, a fair probability existed that Plaintiff had committed the crime of fleeing and eluding under MICH. COMP. LAWS § 750.479a. The videotape demonstrates that the circumstances leading up to Plaintiff's arrest included a high speed pursuit through the residential neighborhoods of the City of Roseville with Plaintiff failing to pull over despite the fact that the officers had engaged their sirens.

Plaintiff argues that the basis for this claim is the Defendants' lack of probable cause to arrest Plaintiff for resisting and obstructing. While this may be true, Defendants had probable cause to arrest Plaintiff for fleeing and eluding. Whether or not they had probable cause for a resisting and obstructing charge is of no consequence as to Plaintiff's state and federal warrantless search and seizure claims. These claims are dismissed as to all Defendants.

## 3.      Malicious Prosecution (Counts III and VI )

A malicious prosecution claim brought pursuant to section 1983 must be based upon the Fourth Amendment. *See Spurlock v. Satterfield*, 167 F. 3d 995, 1006 n. 19 (6th Cir. 1999).[9] A

---

[9]  The Court notes that there appears to be some conflict within this circuit regarding the state of section 1983 malicious prosecution claims. *Id.* (finding that the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994) authorizes a Fourth Amendment malicious prosecution claim); *See also*, *Frantz v. Village of Bradford*, 245 F. 3d 869 (6th Cir. 2001)

police officer cannot be liable for alleged malicious prosecution when the officer did not make the decision to bring charges. *See Skousen v. Brighton High Sch.*, 305 F. 3d 520, 529 (6th Cir. 2002)**.** In *Skousen*, the court held that the plaintiff's malicious prosecution claim failed because the plaintiff "offered no evidence . . . supporting her claim that [the defendant] caused her to be prosecuted," and there was "no evidence that [the defendant] made or even was consulted with regard to the decision to prosecute [the plaintiff]." *Id.* at 529. Plaintiff has not provided this Court with any evidence that any of the Defendants made or were consulted with in regard to the charges brought against Plaintiff. Plaintiff's Fourth Amendment malicious prosecution claim is dismissed.

Plaintiff likewise cannot establish a state claim of malicious prosecution. To sustain a claim of malicious prosecution of a civil proceeding the plaintiff must show: (1) the prior proceedings terminated in favor of the present plaintiff; (2) the absence of probable cause for the prior proceedings; (3) malice or showing that the proceedings were filed for a purpose other than to secure the proper adjudication of the claim; and (4) special injury stemming directly from the prior proceedings. *Dupis v. Kemp*, 2006 WL 401125 *1 (Mich.App. Feb. 21, 2006), *see also Young v. Motor City Apartments Limited Dividend Housing Association No. 1 and No. 2*, 133 Mich.App. 671, 675 (1984). Similar to Plaintiff's federal malicious prosecution claim, because he cannot demonstrate that the Defendants were involved in bringing the charge of resisting and obstructing, he cannot prove that they acted with malice in bringing the charge against him. Plaintiff's state law

---

(holding that *Albright* does not authorize a separate claim of malicious prosecution independent of the underlying illegal seizure claim). The Sixth Circuit in *Darrah v. City of Oak Park*, noted that "when a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case." 255 F. 3d 301, 310 (6th Cir. 2002) ("We are not bound by the *Frantz* court's interpretation of *Spurlock* . . .[n]o new Supreme Court case justified the *Frantz* court's decision to disregard *Spurlock*." *Id.* at 312 n. 4. As such, this Court concludes that *Albright* authorizes a Fourth Amendment malicious prosecution claim.

claim for malicious prosecution is also dismissed.

### C.  Fourteenth Amendment Deliberate Indifference (Count VII)

To state a § 1983 claim based upon a denial of medical care, the plaintiff is required to demonstrate a subjective component and an objective component. *Farmer v. Brennan*, 511 U.S. 825, 834, 128 L.Ed. 2d 811, 114 S. Ct. 1861 (1994); *Brown v. Bargery*, 207 F. 3d 863, 867 (6th Cir. 2000).   To establish the subjective component, Plaintiff must demonstrate that each Defendant possessed a "sufficiently culpable state of mind." *Farmer, 511 U.S.* at 834;  *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004).   The defendant "must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Blackmore,* 390 F. 3d at 896 (quoting *Farmer*, 511 U.S. at 837). A "sufficiently culpable state of mind" is demonstrated when officers act with deliberate indifference to a suspect's serious medical needs. *Farmer,* 511 U.S. at 834.  Intentionally delaying or denying a detainee, who is suffering from a serious medical illness, access to medical care is deliberate indifference. *Estelle*, 429 U.S. at 104-05. Mere negligence is insufficient to establish the existence of the requisite mental state. *Blackmore*, 390 F. 3d at 895-96.  Conversely, proof that the police officer intended the harm to occur, or knew that harm would most likely result is not required to establish that the official acted with deliberate indifference. *Id.*

In order to establish the objective component, a plaintiff must demonstrate a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834; *Blackmore*, 390 F. 3d at 895.  The plaintiff need not demonstrate that his illness worsened due to the delay in medical treatment, where the "illness is so obvious that even a layperson would easily recognize the necessity for a doctor's attention . . . ." *Blackmore*, 390 F. 3d at 899- 900.  A plaintiff need only to establish that "he actually

experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.*

Assuming that Plaintiff has established the objective component, a serious medical need, he cannot demonstrate that Defendants acted with a sufficiently culpable state of mind. Here, Defendants were aware that Plaintiff had lacerations on his face and was bleeding. Defendants did not ignore these facts and called for an ambulance. While there is some conflict as to the amount of time it took for EMS to arrive, this is of no consequence. There is no evidence that Defendants intentionally delayed or denied medical treatment to Plaintiff. While Plaintiff takes issue with the fact that Defendants left Plaintiff in the middle of the street while waiting for EMS to arrive, this does not rise to the level of a sufficiently culpable state of mind. Plaintiff has failed to advise this Court of what medical treatment Defendants should have performed themselves at the scene. While the Court disapproves of Defendants' concern for the blood on their clothing and hands rather than having any concern for Plaintiff as he lay bleeding in the middle of the street, such conduct does not rise to deliberate indifference. If Defendants had not called EMS immediately, and instead fussed over the blood on their clothing and hands, the outcome of this claim may be different. Defendants are entitled to summary judgment on this claim.

### D. Remaining State Law Claims (Counts I, VIII)

#### 1. Assault and Battery (Count I)

Under Michigan law, governmental employees are not immune from their intentional torts, like assault and battery, unless the action constituting the intentional tort is justified. *Brewer v. Perrin*, 132 Mich. App. 520, 349 N.W.2d 198, 202 (1984); *see also, Burns v. Malak*, 897 F. Supp. 985 (E.D. Mich. 1995)("[I]f a governmental employee, e.g. a police officer, 'commits' an 'assault

and battery,' then such conduct would not be protected by the immunity provisions of M.C.L.A. § 691.1407.")   In *Brewer*, the Michigan Court of Appeals noted that:

> [A] police officer may use reasonable force when making an arrest.  Therefore, the measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary.

*Id.* at 528 (Internal citations and quotations marks omitted).  Additionally, whether the officer "could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue."  *People v. Hanna*, 223 Mich. App. 466, 474; 567 N.W.2d 12 (1997).

Under Michigan law, a criminal assault is committed where an actor engages in some form of threatening conduct designed to put another in apprehension of an immediate battery; whether there was an apprehension of an immediate battery depends on what the victim perceived; and whether the apprehension of imminent injury was reasonable.  *People v. Reeves*, 458 Mich. 236; 580 N.W.2d 433, 436 (1998). Whether there was an "apprehension of an immediate battery" depends "on what the victim perceived, and whether the apprehension of imminent injury was reasonable." *Id.*; *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002).  Under Michigan law, a battery is the consummation of an assault.  *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001).

The Court cannot conclude as a matter of law that Defendants' actions were justified. Defendant LaTour immediately ran up to Plaintiff's vehicle and shattered the driver's side window, then with the help of Defendant McLeod, yanked Plaintiff from the car, and dragged him across the street.  As Plaintiff lay face down on the pavement, the Defendants ground their knees into him, struck him with a hard object, then Defendant McLeod employed ten knee strikes to Plaintiff's upper body while Defendant Pfeifer placed his foot on top of Plaintiff and applied pressure to his wrist.  All of this conduct occurred at a time when Plaintiff was not actively resisting arrest, was

not kicking or hitting Defendants, but was in a passive state on the ground. Because Defendant Glandon did not arrive on the scene until after Plaintiff was in handcuffs, Plaintiff's claim of assault and battery is dismissed as to Defendant Glandon. Plaintiff's claim against Defendant Monroe is also dismissed as the only facts regarding Defendant Monroe is that he attempted to touch Plaintiff's hand but pulled away. *See* Defs.' Mot. for Summ. J., Ex. H, Dep. Tr. of Ryan Monroe at 20, 32. Defendants McLeod, LaTour, and Pfeifer's Motion for Summary Judgment as to Plaintiff's assault and battery claim is denied.

### 2.    Gross Negligence (Count VIII)

The Michigan Governmental Immunity Act provides:

(1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function....

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
(b) The governmental agency is engaged in the exercise or discharge of a governmental function.
(c) The officer's employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MICH. COMP. LAWS § 691.1407(1)-(2)(c). The Act defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(2); *See also, Tarlea v. Crabtree*, 263 Mich. App. 80, 82; 687 N.W.2d 333 (2004). No

liability attaches unless the Defendants' actions were the proximate cause of the Plaintiff's injury. *Id.* Gross negligence will be found "if an objective observer watched the actor, he could conclude reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea*, 263 Mich. App. at 90.

Similar to Plaintiff's assault and battery claim, the Court cannot conclude that Defendants McLeod, LaTour and Pfeifer's conduct did not demonstrate a substantial lack of concern for whether Plaintiff would be injured. The Court relies on the facts previously stated in its discussion of Plaintiff's Fourth Amendment excessive force, and assault and battery claims. Defendants Glandon and Monroe are dismissed from this claim.

### E.      Municipal Liability (Count IX)

To establish municipal liability, a plaintiff first must establish that a constitutional violation has occurred. *Lewellen v. Metropolitan Gov't of Nashville and Davidson County, Tennessee*, 34 F.3d 345, 350 (6th Cir. 1994). After this is established, a municipality will be liable if the constitutional violation was a result of the municipality's custom or policy. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 56 L. Ed.2d 611, 98 S. Ct. 2018 (1978). Liability can also be premised on a municipality's or county's failure to train its officers demonstrates a risk that is "so obvious as to constitute deliberate indifference to the rights of its citizens." *Gray v. City of Detroit*, 399 F. 3d 612, 618 (6th Cir. 2005); *See also City of Canton v. Harris*, 489 U.S. 378, 390 (1989)("[T]he need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.").

A municipality can be liable under § 1983 only where "its policies are the moving force

behind the constitutional violation." *Id.* at 388 (1989). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional violation. *Id.* at 385. It is true that,

> "[w]hile officials may not be liable under section 1983 because their actions (or failure to act) were not constitutional violations according to clearly established law at the time the actions took place, a municipality may nevertheless be liable if the actions complained of rise to the level of constitutional violations in light of present law. Stated another way, it is possible that city officials may be entitled to qualified immunity for certain actions while the municipality may nevertheless be held liable for the same actions.

*Barber v. City of Salem*, 953 F. 2d 232, 237-38 (6th Cir. 1992)(Internal citations omitted). Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985).

Here, Plaintiff has failed to establish municipal liability based on a failure to train or supervise. While there is some evidence in the record to suggest that Defendant McLeod was never trained on the use of knee strikes against a citizen, this is not enough to establish that the City of Roseville's policymakers were deliberately indifferent to the need for training on the appropriate use of force. Plaintiff has not come forward with evidence that the incident in question was the result of an existing, unconstitutional municipal policy which is attributable to a municipal policymaker. *Id.* There is evidence that the City of Roseville does not conduct performance evaluations on an annual or biannual basis. *Id.*; *see also*, Ex. D, Dep. Tr. of Joseph McLeod at 12; Ex. F, Dep. Tr. of Thomas Pfeifer at 16-17. Additionally, Defendant Monroe testified that, "[w]e don't have a standardized system [of performance evaluations] if that's what you're asking." *See*

Plf.'s Resp., Ex. E, Dep. Tr. of Ryan Monroe at 12-13. However, standing alone, this is insufficient to establish liability under *Monell*. Defendants are entitled to summary judgment on Plaintiff's *Monell* claim.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART [**Docket No. 26, filed on May 11, 2009**].

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiff's excessive force claim (Count IV) is GRANTED as to Defendant Glandon and DENIED as to Defendants McLeod, LaTour, Monroe, and Pfeifer.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiff's state law claims of assault and battery and gross negligence (Counts I, VIII) is GRANTED as to Defendants Glandon and Ryan Monroe, who are dismissed from these claims and DENIED as to Defendants McLeod, LaTour, Monroe, and Pfeifer.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiff's state and federal warrantless search and seizure claim (Count V) is GRANTED and this claim is dismissed against all Defendants.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiff's state and federal malicious prosecution claims is (Counts III and VI) is GRANTED and these claims are dismissed against all Defendants.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiff's claim of deliberate indifference to a serious medical need (Count VII) is GRANTED and

this claim is dismissed against all Defendants.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiff's *Monell* claim (Count IX) is GRANTED. Defendant City of Roseville is dismissed.

IT IS FURTHER ORDERED that a Status Conference on this matter shall be held on May 3, 2010 at 2:00 p.m.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 30, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager